UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY WILLIAM KESSLER,<br><br>        Plaintiff,<br><br>    v.<br><br>HIGHT,<br><br>        Defendant. | No. 2:16-cv-01930 TLN AC (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff is proceeding in this action pro se, and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). This matter is before the court on a motion for summary judgment brought by sole defendant Officer Michael Hight. ECF No. 36. Plaintiff has filed two responsive documents. ECF Nos. 44 and 45. Defendant filed a reply. ECF No. 46. It is recommended that defendant's motion for summary judgment be GRANTED and that judgment be entered in favor of defendant. Also pending are defendant's motion for terminating sanctions (ECF No. 17), plaintiff's motion for extension of time to respond to discovery (ECF No. 27), plaintiff's motion for a court order (ECF No. 32), plaintiff's motions to compel discovery (ECF Nos. 42 and 56), and plaintiff's motion to appoint counsel (ECF No. 55). Because the undersigned recommends that judgment be entered for defendant, the undersigned further recommends these motions each be denied as MOOT.

////

1

**I.      Procedural Background**

Plaintiff filed this case on August 15, 2016, naming Officer Hight as the only defendant. ECF No. 1.[1] Plaintiff, who at the time of filing was an inmate at Sacramento County Rio Cosumnes Correctional Center,[2] is proceeding in this action pro se, and requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. ECF No. 5 at 1.

Plaintiff's complaint was subject to screening, in which the court is required to dismiss the case "if it determines the allegation of poverty is untrue, or the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant." 28 U.S.C. §§ 1915(e)(2) (screening of IFP complaints), 1915A(a) (screening of complaints by prisoners against employees of governmental entities). On screening, the court found that the complaint stated a claim for relief under 42 U.S.C. § 1983 ("Section 1983"), for excessive use of force during an arrest in violation of the Fourth Amendment. ECF No. 5 at 3. Defendant Officer Hight has now moved for summary judgment on the substance of this claim, or alternatively, on the grounds that he is protected by qualified immunity. ECF No. 36-1 at 8.

**I.      Standard for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

---

[1] The docket's listing of the parties to the lawsuit also identifies J. Boresz as a defendant, and indicates that he was terminated on August 19, 2016, the date the screening order was issued. The Clerk erred in listing J. Boresz as a defendant in this matter. The complaint did not identify Boresz as a defendant or make any allegations against him; rather, the complaint identified Boresz as the defendant in another case previously filed by plaintiff. ECF No. 1. No defendants were terminated from this action on screening.

[2] Plaintiff has since been relocated to Kern Valley State Prison in Delano, CA.

answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## II. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence. Defendant's statement of undisputed facts is located at ECF No. 36-2, and is based on the declarations of Officers Michael Hight and Jeffrey Boresz (ECF Nos. 36-3 & 36-4) and the deposition testimony of plaintiff. Plaintiff's responsive statement of undisputed facts is located at ECF No. 45.

On April 20, 2016, at approximately 9:07 a.m., Sacramento Police Department Officer Michael Hight and Community Service Officer Jeffrey Boresz were dispatched to 5923 67th Street for an emergency disturbance call involving a weapon. ECF No. 36-2 at 1; Declaration of Michael Hight ("Hight Decl.") at ¶¶ 3-4. Officer Height and CSO Boresz were informed by dispatch that plaintiff was armed with a knife and had just hit his roommate. ECF No. 36-2 at 1. Officer Hight and CSO Boresz performed a record check on plaintiff while in route to the

////

4

location, and learned that plaintiff had an outstanding felony warrant and was on probation. Id. at 2.

Officer Hight and CSO Boresz were hailed to the corner of 40th Avenue and 67th Street by two women, later identified as the reporting party and the victim, who informed them that plaintiff was armed with two knives. ECF No. 36-2 at 2. While talking with the two women, Hight and Boresz observed plaintiff walking southbound on 67th Street towards them on 40th Avenue. Plaintiff knew he was on searchable probation and unlawfully carrying a knife in his back pocket. Id. When plaintiff saw the police patrol vehicle on 40th Avenue, he turned around and walked the other direction to avoid the police officers. Id. Hight and Boresz saw plaintiff turn around and Hight drove the marked patrol vehicle toward plaintiff. Plaintiff heard the patrol vehicle approaching from behind and took off running. Id.

Plaintiff ultimately started running down 40th Avenue with the police patrol vehicle following him, and turned on 68th Street and ran northbound until the police patrol vehicle pulled up beside him and Officer Hight ordered him down. ECF No. 36-2 at 2. As plaintiff ran he discarded the knife that was in his back pocket. Id. at 3. Officer Hight ordered plaintiff to stop and then told plaintiff to get down on the ground. Id. Plaintiff got down and lay on the sidewalk with his head facing the adjacent residence and away from the patrol vehicle and Officer Hight. Id.

While plaintiff was on the ground, Officer Hight ordered plaintiff to put his hands out, and plaintiff moved his arms to a 90-degree angle as if making the letter "T" with his body. Id. Officer Hight ordered plaintiff to put his palms facing up. Id. Plaintiff informed Officer Hight that he could not put his palms facing up due to an operation he recently had. Id., ECF No. 44 at 2. Officer Hight approached plaintiff and put his knee on plaintiff's lower back. ECF No. 36-2 at 3. Officer Hight grabbed plaintiff's right hand and twisted his right arm behind his back so that his hand was in the center of his spine. Id.[3] Officer Hight did the same with plaintiff's left hand

---

[3] Plaintiff does not dispute these facts except he further asserts these actions were done "in an evil way" and that Officer Hight was "trying to hurt" him. ECF No. 44 at 3. Plaintiff's characterization of defendant's actions, and speculation about defendant's intent, do not constitute admissible evidence and will be disregarded.

5

and arm and then placed handcuffs on plaintiff. Id.

CSO Boresz contacted plaintiff's probation officer who authorized the charging of a fresh probation violation. Id. at 3-4. Plaintiff was arrested on the outstanding felony warrant, for violating probation, and for carrying a concealed weapon, and was transported to the Sacramento County Jail for booking. Id. at 4. Plaintiff was not charged with resisting arrest. ECF No. 44 at 3. Plaintiff was criminally prosecuted and ultimately convicted of delaying or obstructing a police officer in violation of Cal. Penal Code §148(a)(1) and for possessing a concealed dirk or dagger in violation of Cal. Penal Code §21310. ECF No. 36-2 at 4.

Plaintiff avers that Officer Hight used excessive force against him when he manipulated plaintiff's right arm by twisting it behind his back and re-injuring his rotator cuff. ECF No. 36-2 at 4. Plaintiff states he had a prior rotator cuff surgery on his right shoulder and that it was re-injured in the arrest incident. Id.

### III. Analysis

A. Governing Legal Principles

Plaintiff alleges that defendant Officer Hight used excessive force, in violation of his Fourth Amendment rights, while executing his arrest. Officer Hight contends that plaintiff has not produced evidence sufficient to demonstrate a triable Fourth Amendment issue. "An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures." Torres v. City of Madera, 648 F.3d 1119, 1123-24 (9th Cir. 2011), cert. denied, 132 S. Ct. 1032 (2012). The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985).

Officer Hight also asserts that he is entitled to qualified immunity. Government officials are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly

and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Ideally, qualified immunity is determined at the earliest possible stage in litigation to avoid unnecessary burden and expense. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

In Saucier v. Katz, the Supreme Court set forth a two-step inquiry for determining whether qualified immunity applies. 533 U.S. 194, 201 (2001) (overruled in part by Pearson, 555 U.S. 223). First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Second, if the answer to the first inquiry is "yes," the court must ask whether the constitutional right was "clearly established." Id. This second inquiry is to be undertaken in the specific context of the case. Id. In Pearson v. Callahan, the Supreme Court removed any requirement that the Saucier test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "To meet this standard the very action in question need not have previously been held unlawful." Id. (internal quotation marks omitted). This is especially the case in the context of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness" requires a fact-specific inquiry. Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). The court must determine "whether a reasonable officer would have had fair notice that the action was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted). At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004).

////

B. The Undisputed Facts Fail To Establish A Fourth Amendment Violation

In this case the court begins with the first prong of the qualified immunity analysis, which presents the same question as does the motion for summary judgment on the merits: do the facts, viewed in plaintiff's favor, support a finding that the officer's conduct violated a constitutional right? They do not. "Handcuffing an arrestee is standard practice, everywhere." LaLonde v. County of Riverside, 204 F.3d 947, 964 (9th Cir. 2000) (Trott, J., concurring in part, dissenting in part). The undisputed facts show that plaintiff was handcuffed in the usual way. Although applying handcuffs in an abusive manner can constitute excessive force, see Hansen v. Black, 885 F.2d 642, 643 (9th Cir. 1989), the facts here do not support a finding that Officer Hight acted in an abusive manner.

The objective reasonableness of force is evaluated in the context of the circumstances facing the officer. Graham v. Connor, 490 U.S. 386, 396 (1989). The relevant circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. In this case, plaintiff was arrested after fleeing the police on foot. The officers knew that he was on probation and had an outstanding felony warrant. The police had been called with a report that he had assaulted his roommate in an altercation involving a weapon. Plaintiff was reportedly armed with two knives, one of which he was seen discarding as he ran away from police. In light of these facts, Officer Hight was fully justified in handcuffing plaintiff swiftly and securely as soon as he stopped running and lay on the ground.

Plaintiff has presented no evidence that any force was used other than a knee pressing on his back and the movement of his arms from an outstretched position to behind his back for the application of handcuffs. These facts contrast with those of cases in which qualified immunity has been denied to officers who used force to effect handcuffing. See, e.g., Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (qualified immunity denied where the arresting officer grabbed plaintiff from behind and smashed his face and chest into a vehicle before applying handcuffs). Plaintiff's subjective experience of pain, without more, cannot establish a constitutional violation because the deliberate infliction of pain does not necessarily violate the

Fourth Amendment. Forrester v. City of San Diego, 25 F.3d 804, 806-07 (9th Cir. 1994) (use of "pain compliance techniques" not unreasonable).

In essence, plaintiff contends not that the force Officer Hight employed was inherently unreasonable, but that it was unreasonable *as to him* because of his pre-existing rotator cuff injury. He does not argue that the way Officer Hight twisted his arms behind his back would have hurt anyone, and was therefore objectively unreasonable, but that it hurt *him*. However, the reasonableness of force under the Fourth Amendment is evaluated from the point of view of the officer, not from that of the individual subjected to force. Graham, 490 U.S. at 396. From the point of view of the arresting officer, putting plaintiff's arms behind his back to apply handcuffs was not objectively unreasonable. The fact that plaintiff's pre-existing condition made him unusually vulnerable to injury from this routine maneuver does not mandate a different conclusion on the facts of this case.

Even crediting plaintiff's testimony that he told defendant he could not change the position of his arms as directed, executing the standard handcuffing procedure was not objectively unreasonable. See Startzell v. Velie, 2005 U.S. Dist. LEXIS 49187, *17 (W.D. Wash. 2005) (even if plaintiff told the arresting officer about his rotator cuff injury prior to handcuffing, "use of [an] accepted law enforcement technique did not constitute the use of unreasonable force.") The undersigned does not mean to imply that force can never be excessive in relation to a particular individual's physical limitations. A degree of force that would be reasonably necessary to subdue or handcuff an able-bodied person might, in some circumstances, violate the Fourth Amendment when applied to a disabled or injured suspect. This is not such a case, however. Plaintiff had been running from the police, and there are no facts to suggest that he appeared in any way to be disabled.

The evidence demonstrates a single statement made by plaintiff to the arresting officer about his physical limitations. It is undisputed that plaintiff told Officer Hight he could not turn his palms face-up while he was lying on the ground in a T position, due to recent surgery. Plaintiff did not tell Officer Hight that he could not move his shoulder, or that moving his arms would cause him injury. There is no allegation or testimony that plaintiff told Officer Hight that

9

he was physically incapable of putting his arm behind his back, or that he told Officer Hight he was hurting his arm or shoulder, or that he asked Officer Hight to stop. The district court in Startzell, supra, found no Fourth Amendment violation even where such specific statements had been made. This court need not consider whether such evidence would create a triable issue as to objective reasonableness, because there is no such evidence here. Particularly in light of the reality that law enforcement officers must make "split second judgments — in circumstances that are tense," Graham, 490 U.S. at 394, plaintiff's evidence fails to establish an objectively unreasonable use of force.

C. Officer Hight Did Not Violate A Right That Was Clearly Established

Even if there were a material factual dispute about the degree of force Officer Hight used to manipulate plaintiff's arms into position for handcuffing, defendant would be entitled to qualified immunity. Plaintiff has identified no authority establishing a clearly established right not to have his wrists handcuffed behind his back in the general circumstances presented by this case, and the court is aware of none. Officer Hight's actions were not in violation of Circuit law holding that officers use excessive force when they handcuff suspects in a way that causes injuries where none previously existed, see Hansen, 885 F.2d at 645, or when they apply handcuffs too tightly, see LaLonde, 204 F.3d at 960.

This case is similar to Malek v. Green, 2017 U.S. Dist. LEXIS 159373 (N.D. Cal. 2017), in which qualified immunity was granted to an officer who allegedly applied handcuffs in a way that aggravated a pre-existing injury. As the district court explained in Malek:

> While the Ninth Circuit has long recognized that excessively tight handcuffing may constitute a Fourth Amendment violation, the Complaint contains no allegations that the handcuffs were too tight, that the handcuffs hurt or damaged Malek's wrists, or even that they caused any other injury. Rather, Malek alleges that the pain resulted from "aggravating a pre-existing back injury." Compl. ¶ 31. Ninth Circuit precedent establishing that overly tight handcuffing can constitute excessive force is therefore not applicable to the facts as alleged in the Complaint. Malek has not cited, and the Court has not found, any case holding that handcuffing alone, or handcuffing when the suspect alerts the officer to a pre-existing injury, is sufficient to state a claim for excessive force.

Id. at *54-55.

The same result was reached in <u>Strem v. City of San Diego</u>, 2017 U.S. Dist. LEXIS 177202 (S.D. Cal. 2017), in which plaintiff alleged that he was handcuffed behind his back despite his insistence that his pre-existing shoulder injuries made the position impossible for him. The court found that no clearly-established law holds that the failure to accommodate a pre-existing physical condition constitutes excessive force. <u>Id.</u> at *19.

This court comes to the same conclusion as the <u>Malek</u> and <u>Strem</u> courts. In the absence of clearly-established law holding that handcuffing alone, or when the suspect alerts the officer to a pre-existing injury, violates the Fourth Amendment, defendant Hight is entitled to qualified immunity. For all the reasons explained above, having construed the evidence in the light most favorable to plaintiff, the undersigned finds that Officer Hight did not violate plaintiff's constitutional rights and, in the alternative, that he is protected from suit by qualified immunity. <u>Pearson</u>, 555 U.S. at 236.

## IV. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 36) be GRANTED and that judgment be entered in favor of defendant. It is further recommended that all other pending motions (ECF Nos. 17, 27, 32, 42, 55, and 56) be DENEID as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.

////

////

////

Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: April 17, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE